IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Davorius M. Mack,<br><br>                        Plaintiff,<br><br>         vs.<br><br>South Carolina Department of<br>Corrections, et al.<br><br>                   Defendants. | Civil Action No. 6:11-1230-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

        On October 3, 2011, the defendants filed a motion for summary judgment. By order filed October 4, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on October 28, 2011.

## FACTS PRESENTED

        The plaintiff is incarcerated in the Special Management Unit ("SMU") at Perry Correctional Institution. He alleges that on October 15, 2010, he had complained to nursing staff that he had not urinated in three days. He states that he believed that he was going to be taken to medical. The plaintiff states that he started beating on his door and did so for 30 minutes or more. He alleges that he was advised by an officer that there had been an attempt to call medical, but they did not answer. During this time, the evening meal was

served. When the officer came by to pick up the plaintiff's dinner tray, the plaintiff admits that he refused to return the tray. The plaintiff asserts that a few minutes later, a sergeant came by and again the plaintiff refused to return his tray. The plaintiff states that Lt. Harouff came to his cell and ordered him to come to the door to be restrained and admits that he refused two direct orders to do so. As a result, a Force Cell Movement Team was assembled and, after the plaintiff again refused to go to his cell door and be restrained, chemical munitions were used. The plaintiff states that following the incident he was checked by nursing staff and was escorted to medical where a catheter was inserted. The plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and that the defendants were deliberately indifferent to his medical needs (comp. at 3-6).

In support of their motion for summary judgment, the defendants submitted the affidavits of Sgt. Jonathan Church, Sgt. Thomas Robertson, Lt. Daniel Harouff, Sgt. Derrick Nalley, Administrative Specialist Kathy Hill, and Inmate Grievance Branch Chief Ann Hallman, along with the incident report for the October 15, 2010 incident, the report on the use of force on that date, the management information notes for that incident, and the plaintiff's medical summary showing all medical encounters from the date of the incident forward.

The defendants assert that when the plaintiff refused several direct orders from different officers, a Force Cell Movement Team was assembled by Lt. Harouff (Harouff aff. ¶¶3,4; Church aff. ¶2; Robertson aff. ¶2; Nalley aff. ¶2). When the plaintiff refused multiple orders to come to his cell door to be restrained, chemical munitions were used (Harouff aff. ¶¶4,5; Church aff. ¶3; Robertson aff. ¶4; Nalley aff. ¶3). The defendants further assert that the plaintiff was found to have feces and urine in a container in his cell (Harouff aff. ¶¶5,6; Church aff. ¶4; Robertson aff. ¶5; Nalley aff. ¶4). Following the incident, the plaintiff was checked by medical staff and was escorted to medical for the placement

of a catheter (Harouff aff. ¶9; Church aff. ¶5; Robertson aff. ¶6; Nalley aff. ¶¶4,8).  The plaintiff filed a step 1 grievance, which was denied.  He did not file a step 2 grievance (Hallman aff. ¶¶2-4).

The plaintiff's medical records show that during the afternoon on October 14, 2010, he complained regarding being unable to urinate for two days.  An examination showed no abdominal distention, and he was in no acute distress.  The plaintiff complained that his bladder was tender to touch.  On October 15, 2010, the plaintiff was brought to medical following the incident described above.  He was not in respiratory distress, but he voiced concerns about not being able to urinate for three days.  He was in moderate pain. A catheter was inserted, and the plaintiff was given an oral antibiotic and an injection for pain (Hill aff., ex. E, pl. med. records).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold

3

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Cruel and Unusual Punishment

Correctional officers must often use force to maintain order, and they must "balance the need to maintain or restore discipline through force against the risk of injury to inmates." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). To demonstrate that a use of force violated the Eighth Amendment, an inmate must establish that "a prison official applied force 'maliciously and sadistically for the very purpose of causing harm.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In addition to satisfying the subjective component, an inmate must establish that a correctional officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Hudson*, 503 U.S. at 8).

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) The need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible

4

officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (noting that the extent of injury "'may suggest whether the use of force could plausibly have been thought necessary in a particular situation'" and thus is a factor to be considered in the Eighth Amendment inquiry (quoting *Hudson*, 503 U.S. at 7)).

"[A]lthough it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells," the Fourth Circuit has observed that "it is necessary to examine the totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir.1996) (internal quotation marks omitted). "[M]ace can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.'" *Id.* (quoting *Landman v. Peyton*, 370 F.2d 125, 138 & n.2 (4th Cir. 1966)). "A limited application of mace may be 'much more humane and effective than a flesh to flesh confrontation with an inmate.'" *Id.* (quoting *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984)).

In this case, the plaintiff admits in his complaint that he was beating on his cell door for at least 30 minutes because he wanted to go to medical. The plaintiff further admits that he was told by the defendants that they had attempted to call medical on his behalf. He admits that he refused to give his meal tray to Cpl. Root and Sgt. Robertson when ordered to do so. The plaintiff also refused at least two direct orders from Lt. Harouff to come to his cell door to be handcuffed. The plaintiff further admits that after the chemical munitions were discharged, he still refused to go to his cell door to be handcuffed when instructed to do so by Lt. Harouff (comp. at 4). The plaintiff admits he was taken outside for fresh air and was allowed to wash off in his cell, but he complains that he was not allowed to shower and that his cell had not been cleaned (*id.* at 5). The plaintiff admits that

a nurse came to his cell a short time later to check on him, and he was taken to medical (*id.* at 5-6).

Lt. Harouff states in his affidavit that on October 15, 2010, the plaintiff was complaining of difficulty urinating (Harouff aff. ¶2). Lt. Harouff called the medical department but was advised that they could not see the plaintiff at that time (*id.*). When the evening meal was served, the plaintiff refused to return his tray and began to mule kick the cell door violently (*id.* ¶3). He refused several direct orders by Lt. Harouff and Sg. Robertson to return his meal tray (*id.*). As a result, Lt. Harouff assembled a Force Cell Movement Team (*id.* ¶4). Upon returning to the plaintiff's cell with the team, the plaintiff was ordered to come to the cell door to be restrained (*id.*). The plaintiff was seen with a homemade gas mask consisting of a deodorant container with material from the bedding, and he had a pillow over his door flap (*id.*). After discharging a small amount of chemical munitions into the plaintiff's cell, Lt. Harouff saw that the plaintiff had a container of feces (*id.* ¶5). The plaintiff had been found with weapons a short time earlier and had threatened to use those weapons on employees (*id.*). Lt. Harouff utilized chemical munitions three times before the plaintiff came to the door to be restrained and put down the cup of feces he had been carrying (*id.* ¶¶6,7). An epsom salt container full of urine and feces was found upon entering the cell (*id.* ¶6). Following the incident, the plaintiff was searched for weapons and taken outside of his cell for fresh air (*id.* ¶8). He was allowed to decontaminate with the running water in his cell (*id.*). The plaintiff was seen by medical staff and was later taken to medical to have a catheter inserted (*id.*).

Sgt. Jonathan Church states in his affidavit that he was a part of the Force Cell Movement Team assembled by Lt. Harouff on the date of the incident (Church aff. ¶2). Church states that when the team arrived at the plaintiff's cell, the plaintiff failed to comply with orders to come to the door to be restrained and chemical munitions were used to gain the plaintiff's compliance (*id.* ¶3). Sgt. Church observed the plaintiff with a homemade gas

6

mask comprised of a deodorant bottle stuffed with pillow lining or bedding materials (*id.* ¶4). Sgt. Church also observed feces in the plaintiff's cell and a cup of feces and urine (*id.*). Following the incident, the plaintiff was checked by medical and allowed to decontaminate with water in his sink (*id.* ¶5). The only force used in this incident was chemical munitions by Lt. Harouff only after the plaintiff failed to comply with direct orders to come to the door and be restrained (*id.* ¶6).

Sgt. Thomas Robertson was also a member of the Force Cell Movement Team on the date of this incident (Robertson aff. ¶2). The Force Cell Movement Team believed that the plaintiff was a threat to throw bodily fluids, and the team was clothed in inmate jump suits to prevent those materials from being thrown on their clothing (*id.* ¶3). As the team approached the plaintiff's cell, Lt. Harouff ordered the plaintiff to come to the door to be restrained, which the plaintiff refused to do (*id.* ¶4). The plaintiff came to the door after chemical munitions were used and was attempting to breathe through a deodorant tube with cotton in it to avoid the effects of chemical munition (*id.* ¶5). The plaintiff was allowed to decontaminate with water in his cell following the incident, was seen by medical, and was later escorted to medical where a catheter was inserted (*id.* ¶6).

Sgt. Derrick Nalley also states that on October 15, 2010, he was a part of the Force Cell Movement Team (Nalley aff. ¶2). As the team arrived at the plaintiff's cell, the plaintiff was given a direct order to come to the door to be restrained by Lt. Harouff (*id.* ¶3). The plaintiff refused to obey that order, and chemical munitions were used to gain his compliance (*id.*). Nalley removed a pile of feces on a sheet of paper from the plaintiff's cell (*id.* ¶4). The plaintiff was checked by medical staff after the incident and was given the opportunity to decontaminate with water in his cell (*id.*). Later, Nalley escorted the plaintiff to medical due to his inability to urinate (Nalley Aff. ¶5).

In his response in opposition to the motion for summary judgment, the plaintiff does not address the defendants' affidavits stating that he had containers of feces and urine in his cell.

Here, the plaintiff cannot satisfy the objective or the subjective components of an Eighth Amendment claim. The undisputed evidence shows that a minimal amount of force was used in a good faith effort to gain the plaintiff's compliance. The plaintiff had been found with weapons a short time earlier and had threatened to use those weapons on employees. The Force Cell Movement Team also believed that the plaintiff was a threat to throw bodily fluids, and indeed containers of feces and urine were found in his cell. Furthermore, there is no allegation of any injury suffered by the plaintiff. Based upon the foregoing, summary judgment is appropriate on this claim.

### Deliberate Indifference to Serious Medical Needs

The plaintiff also alleges that the defendants were deliberately indifferent to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff's medical records show that on October 14, 2010, he was seen for sick call complaining that he had not urinated in two days (Hill aff., ex. E, pl. med. records, encounter 292). On the date of this incident, the plaintiff was in no respiratory distress from the chemical munitions. He voiced concerns about not being able to urinate, and Dr. Bearden was notified of the plaintiff's issue. A catheter was inserted, and the plaintiff was given medication (*id.*, encounters 293-295). He was seen on October 19, 2010, for an unrelated issue. No complaints of difficulty urinating were noted at that time. On October 21, 2010, medical was notified by Lt. Harouff that the plaintiff was stating that he had not urinated in ten days. It was noted that the plaintiff was catheterized on October 15, 2010, less than ten days prior (*id.*, encounter 297). A short time later, the plaintiff was noted to be feeling fine and stated that he had urinated (*id.*, encounter 298). He has been

seen for numerous other issues and has made no further complaints about difficulty urinating. The undisputed evidence shows that the plaintiff was immediately allowed to wash off following the officers' use of chemical munitions, and he was promptly seen and treated for his issue with difficulty urinating. The plaintiff has not shown that the defendants were purposefully indifferent to his serious medical needs. Based upon the foregoing, summary judgment should be granted on this claim.

***Qualified Immunity***

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted (doc. 33).

IT IS SO RECOMMENDED.


March 14, 2012                                  s/ Kevin F. McDonald
Greenville, South Carolina                      United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.